May it please the Court. My name is Rick Smith, and I'm here on behalf of the appellant, Senn Moses. Your Honors, this is a fully executed, integrated, binding contract between an employee and an employer. With a possible scrivener's error in it. Correct. So the primary question that we are asking the Court to decide is whether it agrees that this is a binding contract. If the Court disagrees with that proposition, then unfortunately for my client, he loses. If the Court agrees that this is a binding contract, then there's only two possibilities. One is that the enforcement of this contract does not relate to an ERISA plan, in which case we get remanded to the State Court. The other possibility is that if the enforcement of this contract does relate to an ERISA plan, then the question becomes very simple. Is there any principle under ERISA or the federal case law or any jurisdiction that allows an ERISA plan administrator to set aside or vitiate or reform an agreement that it feels there is a clerical error in when that administrator is not even a party to the agreement? And appellant respectfully submits that the answer to that question is a resounding no. In fact, the law is clear that a plan administrator does not even have the power to reform its own plan document to correct the mistake, let alone an agreement to which it's not even a party. And when Nielsen discovered what it thought was a clerical error, it had one option, and that was to seek judicial reformation of the contract in a court of law. But instead, Nielsen shipped the contract off to the plan administrator to attempt to have the administrator impose a judicial remedy in the contract. You're saying the reformation cannot be asserted as a defense? It certainly can, Your Honor, but it must be asserted as a defense in a court of law. The law is clear that a plan administrator does not. Well, I guess here we are. Well, indeed we are, but indeed we are, Your Honor. And if this had been done the correct way, then Nielsen, as the party claiming the mistake, would be charged with showing that the – both parties were – had the mutual intent to enter into a different term and that both parties were mistaken. They never even attempted to show that. And so the problem here is really the procedure has been wrong from the get-go. And really, so the question is whether the plan administrator has the power to reform an agreement that it feels there's a clerical error in, and we submit it does not have that power, and its purported attempt to judicially reform the agreement was not only an abuse of discretion, but it was just completely outside the administrator's power and authority whatsoever. And therefore, we think that the decision of the administrator and the trial court upholding that decision must be reversed. What about the disclaimer that was in the severance agreement that refers back to the plan? Isn't that at play here as well? And doesn't that provide some basis for the administrator to look at whether a mistake was made? We don't believe it does, Your Honor, and I'll tell you why. It is true that the appendix has that disclaimer. But if you look at paragraph 2 of the agreement, it plainly states, and that's on the first page, it plainly states that the benefits to which my client was entitled are subject to the terms and conditions of the plan and this agreement. So to the extent that the disclaimer pulls the benefits over to the plan, the language of this agreement pulls it right back to the agreement. So at best we have a push. But here's the thing. The fact is that the amount of benefits found its way into the agreement. And they claimed it's a mistake. So the remedy that they are seeking is correction of a mistake. So I'm not sure how the disclaimer would grant the administrator a power that it otherwise does not have. There's nobody other than a court of law that can correct a mistake in a fully executed binding agreement. And that's exactly what the administrator purported to do. So I guess the fight is really whether or not this is the right court of law or whether it's the state court. Where do you want to lose? Where do we want to lose, Your Honor? It seems to me so obvious that this is a Scrivener's error. The district court thought it was obvious that you were going to lose. I would be astounded if a superior court judge would think otherwise. Well, Your Honor, unfortunately for the district court, that is an issue upon which my client deserves due process. And, frankly, the clear law under federal and state law is that a deliberately prepared agreement is the best presumed evidentiary presumption that that's the intention of the parties. And Nielsen would have, notwithstanding what the district court decided early in the case, it would be Nielsen's burden to show that my client was mistaken as to this amount. And that's just not the case. And they could not show that. And so they're not going to be able to win in state court or in federal court. Unfortunately, they simply can't show that. And they've never purported to show that. It's not going to happen. But I understand your position on the disclaimer. And you may well be correct that it doesn't have a substantial impact. But isn't a viable issue raised there which would then suggest that there's appropriate federal jurisdiction to assess whether the disclaimer has an impact on the agreement? Well, Your Honor, I believe there are two separate issues. Certainly, this Court must decide whether the enforcement of this agreement relates to an ERISA plan, as that's, you know, as that terms have been defined under the, you know, under the applicable case law. But the question is, what's the effect of the disclaimer? I mean, as I understand, Nielsen says, well, you see this disclaimer. And that means that this agreement is subject to the plan. Well, that may be. But that doesn't change the legal effect of this document as a fully binding contract. Now, if we read their argument to say, well, you should have read the plan, well, there's nothing inconsistent in this agreement with the plan on its face. And therefore, my client said, well, I've got this agreement. I'm being told by the person I'm directed to deal with that this is the last approved version of the agreement. I'm going to sign it. Now it's a binding contract. And if Nielsen claims that there's an error, you know, it has to seek judicial reformation. And unless the Court has any further questions, I'd like to reserve my time to rebut Appellee's arguments. Thank you. May it please the Court. I think I'd like to start out by redressing what counsel said in a couple of comments. First, counsel indicated that at best there was a push between what Your Honor has characterized as a scrivener's error. He also said that there was nothing inconsistent. There was nothing inconsistent between the error, we'll call it for want of a better term, the error and the plan. But that's not true. The plan provides for salary continuation. And that's the key to this case, is that the scrivener's error is in a document that refers to the plan. And, of course, we've cited the Court to the case, Western District case and Sixth Circuit case, that simple explanations of plan benefits cannot control over the terms of the plan. And that brings us to why this case isn't Graham versus the Graham case, the Ninth Circuit Graham case. Because in the Graham case you have an external contract, a settlement of a lawsuit outside of the case that simply makes reference to plan benefits. In this case you have the reverse situation. You have a plan. Everything, every benefit being exchanged here is either a plan, is a plan benefit, is a feature of the plan. The plaintiff, two of the terms are the plaintiff receives salary continuation and the defendant receives another benefit. His argument is if it's enforceable as it's written, this is a contract written outside the plan because the plan doesn't provide for this. Your argument on the other is, well, no, wait a minute. There's a scrivener's error. This comports perfectly with the plan. So your argument is this lawsuit is deeply related to the plan because, in fact, the contract is properly understood as the plan. But his argument brings it into Graham, at least so he hopes, because he says this is a Graham contract. It's entirely outside the plan. You're right, Your Honor. So it's a question of you look at it one side or the other, you get a different answer. That's right. This is one of those chicken or the egg cases, I agree. And I think where you get off, where you resolve the question is by applying the standards. Does the decision of the plan administrator, which is the decision at issue in this case, does it affect the administration of the plan? And unlike in Graham, this case clearly does. In this case, what is salary continuation is a key thing. If, for example, the various descriptions of the plan, as mistakenly sent out by human resources, can modify the plan by giving people more than they're entitled to under the plan, then you have an instance where you're exceeding the terms of the plan, because the plan by its terms can only be modified by the CEO of the company. And ultimately, the question is who gets to decide that. And standard of review sort of devolves down to standard of review. And it's kind of a little bit complex in this case. Review of whether or not the case is preempted is done de novo. And, you know, I don't follow what you're saying. Why does ERISA care? I mean, you think salary continuation, you're sort of saying it means salary continuation at the same rate. You could have salary continuation with a raise. You could have salary continuation at a different rate. You could have salary continuation, salary continues, but at a diminished rate. What is it about salary continuation that cinches it for you? Well, I think the point is who gets to make that decision. The plan administrator, when confronted with that question, it is the plan administrator's job, the discretion is delegated under the terms of the plan to the plan administrator, to ascertain what the salary was. Was it the salary that the employee in fact earned? It's a matter of fact. What he earned is a matter of fact. And it's for the plan administrator to make that determination and for this court to review. Because it comes out of ERISA funds? Well, it's not a funded plan. It comes out of the general assets of the company. But it comes out, it is an ERISA benefit. It is a severance benefit under ERISA. And therefore, it is the function of the, one of the functions of the administrator to determine what salary continuation means. Because in this case, they determined that it's what he was actually earning, not double what he was actually earning. Why can't the employer enter a plan that says, you know, you get whatever from, as an ERISA benefit, and because we like you so much or because we think you're a lot of trouble and we want you to go away and never come back and bother us again. And we'll add something extra just to make you happy and avoid any further problem with you. Why does it all have to be governed by the ERISA administrator? Because all of the evidence in this case is that what is being sought is the benefit, the salary continuation. You know, I wouldn't fight Judge Kaczynski's questions or hypotheticals because if this contract is seen as a continuation of salary benefits, whether it's the continuation at the same rate or at a double, this is a suit under the plan, which means we're in federal court. So if we're talking preemption, Judge Kaczynski's questions feed right into your position. I agree. But my question actually went a little beyond that, and that is, assuming there is an ERISA benefit here and the administrator is right in saying, you know, it's limited to the amount of his existing salary, why is that exclusive on the obligation that the employer has outside the plan to play the balance? How can the ERISA administrator limit the degree of generosity or business acumen that the employer has in trying to buy off a troublesome employee or a particularly good, valued employee? Why can't the ERISA administrator simply say, look, as an ERISA matter, that's what you'll get. If the employer wants to then give you a gold watch or a diamond ring or, you know, free health care benefits for two years for you and your family or, you know, whatever, then, you know, that's up to the employer. How can the administrator, having once determined what the ERISA benefits are, how can the administrator tie the employer's hands in being more generous? Well, the employer, the administrator can't tie the employer's hands, but the administrator can interpret the plan, which is the only remedy being sought here. As Justice Thunheim mentioned, the very appendix that is the only document, the only fact, the only grain of sand in this case is that it itself says this is subject to the plan. This is a plan benefit. If, Your Honor, if that hypothetical situation existed, any time anyone described a different benefit than the plan benefit, then it would suddenly went off and became a state law contract apart from the claim, and the administrator had no responsibility or discretion to say, no, this is an ERISA plan benefit, and it is defined under the plan documents in the summary plan description. This description is wrong because it's inconsistent with the plan. So I don't think it would be wise or a proper application of ERISA to say any time you have any sort of statement that's inconsistent with an ERISA plan that is referring to the benefit that it creates a separate contract. That's a long answer, Brian. You don't understand. I understand the point of your answer. I mean, that is all true, but so what? I think all of the evidence in this case is the benefit that being described that it was described. Let me ask the question just a slightly different way. Assuming that the employer wants to grant the employee ERISA benefit, but for reasons of his own and deliberately, not as a matter of mistake, but otherwise says, in addition to that, we want to heap some other benefits on you for our own business purposes. But in this case, an employer can do that, right? An employer can do it, but not under the terms of the plan, because in this case, the plan had a specific requirement that only approved benefits, approved by the CEO, could be used to vary from salary continuation. That's what's absent from here. The plaintiff was given tons of opportunity to produce any sort of showing that there was this, and all of the evidence in this case is that Nielsen never made such an agreement. The only thing there is is this misstatement of the man's salary, this double salary that there is no other evidence. And to allow that to interpret the plan, you would also write out of the plan its requirement that the only way you can increase benefits is by a special dispensation by the CEO. The way you can increase ERISA benefits? The benefits under the plan. Right. So the employer says, fine, you know, we're not going to increase your benefits under the plan. We just want to give you a pound of gold. We want to give you a gold watch in addition. You know, so that's how it happens these days. But this contract is part of the plan. This contract is a description of benefits under the plan. So in your view, if the employer wants to do that, the employer has to then have a different contract, a second contract or something that provides that. It cannot increase benefits under the plan without proper amendment of the plan. It can, of course, separately make a side agreement. Why can't they say, look, you're going to get under the plan, you're going to get your salary. But this contract provides for more, and the rest of it is not going to be under the plan. The rest of it is going to just be us being generous and nice to you. Why can't the employer sign that kind of agreement that says you get under the ERISA benefit, whatever the administrator says, and we'll make up the difference. Whatever the ERISA administrator says is not covered by the plan, we will reach into our own pocket, you know, coffers, and give it to you anyway. Perfectly possible, but that's not what the evidence suggests happened here. But if you had a severance agreement in which the gold watch is provided and there's nothing in the plan that says anything about gold watches and there's a disclaimer in the plan, could the administrator take away the gold watch? If the gold watch was in agreement separate from the plan, it could be an enforceable agreement. But this plan specifically says it is for salary continuation. It provides no other benefit. Well, it says certain benefits and salary continuation is what it actually says. Why can't the certain benefits be the other half of the salary? Because the plan document and the summary plan description all define the benefits. I mean, the certain benefits could be a gold watch, right? It would have to be written into the plan document. Well, here it is. I mean, the other half of the salary is written into this plan. Let's say this said in addition to this you get a gold watch, right? And they say, well, it says certain benefits and salary continuation. You point to the certain benefits and say the gold watch falls under that. Why doesn't the other half of the salary fall under certain benefits here? But there is nothing in the plan other than salary continuation. That benefit simply says you will get salary continuation, and it defines incorrectly what the salary is. There is no gold watch there. There is no additional increment of money there. It is all contained within salary continuation. Okay. I think we understand. Thank you, Your Honor. Your Honor, just to follow up on the point that was being made there. My client's contention is, look, you're the employer, and you agreed to give me this amount. And so if the administrator says that that amount is not, you know, allowed under the plan, well, then my client's position is, well, that's too bad because you agreed to it, so you've got to make up the difference. And if you're claiming that, well, now, which is what? That's not what they claimed in the administrator's decision. It's a mistake. Again, there's no authority for the administrator to unilaterally reform the agreement. It's just a remedy that they are not authorized to provide. But I want to note that Mr. Lilly keeps referring to the contract as a statement. As I started out here today, this is not a statement. This is a fully executed, integrated, binding contract. That's the difference here. That brings me back to the discussion of Graham because a moment ago we were discussing if the ‑‑ it's clear that under Graham v. Balcor, the fact that an agreement provides benefits pursuant to an ERISA plan does not necessarily mean that the enforcement of that agreement is preempted. Because if it were, then Graham would have been in federal court and not in state court. So the question is really whether the enforcement of the agreement at hand relates to ERISA. It's not simply whether it's an ERISA plan in play. And I think that Nielsen spends a great deal of his brief trying to show that this is an ERISA plan. And, you know, even if we were to concede that that's the case, that still doesn't mean that the action to enforce this agreement to which the administrator nor the plan is even a party is preempted. Your Honor's raised good points because in setting forth all of the supposed administrative duties they have to provide, they only show that they're administering benefits and not the plan. And under Fort Halifax and the other cases, that's simply not the standard. And by the way, the exact ministerial duties that they claim were administration was found in DeLay v. AgriPAC to not be the type of ongoing administrative scheme. So I think Your Honor's raised a great question as to whether this is really an ERISA plan at all. And I'll let the court decide that. But the fact is that we have a contract here. And you can't say there's a mistake. They continue to say there's no evidence that they agreed to provide more than what was in the plan. Well, again, under the case that we cited from the Second Circuit, Healy v. Rich Products Corp., there's a heavy presumption that a fully executed agreement is the intent of the parties. So that's the burden. That's where we start. So to say that we have no evidence, my client says, well, wait a minute. What about this fully executed agreement? That's my evidence. You combine that with the fact that the person he was told to deal with told him. Now, they first gave him this mistaken document on April 19th. Then they gave him a 21-day period to decide whether he could release his statutory age discrimination in employment act. Following that 21-day period, they sent him the exact same agreement, and in that email said this is the last approved version of the settlement agreement. Any reasonable employee would say, okay, you're telling me it's approved. You're ready to sign on the dotted line as am I. Let's enter into this agreement. And then they did. And at that point, it's now a subject of contract law. Whether we're under ERISA or not, it's a contract. And you can't simply just wave the magic wand and make this contract go away and say that's not available under the plan. The real world just doesn't work like that. And unfortunately for Nielsen, they needed to seek remedy from a court of law. You can't just send it off to the administrator and have them correct this clerical error under the guise of ERISA discretion. The law is clear that an administrator can't even do that to its own plan, let alone, you know, a contract to which it's not even a party. The disclaimer makes no difference then. Well, the disclaimer certainly says that the benefit is subject to the plan. There's no cap on the benefits in the plan. There's provisions. There are factual circumstances in which Nielsen can grant anything, any higher amount of benefits. And so if we're just talking about if you follow the disclaimer and you look in the plan, there's nothing in the plan that's going to say, oh, this is not allowed here. So in other words, even following up on that disclaimer and you read the plan and you say, well, nothing wrong here. They signed this agreement. We're good to go. So is this other benefits or is it salary continuation? This is a higher level of benefits. So it falls under that other benefits clause that the Chief Judge read. Well, yes. We would contend it is. But see, here's the important thing is we're contending that we have an agreement that needs to be enforced. It's Nielsen that comes in and says, well, this is a matter of the ERISA administrator's discretion. We're not claiming that. Our state law claim was against Nielsen, the employer, for breach of contract, not against the administrator or the plan. This is not a suit to enforce a violation of the plan. This is not a suit to get benefits under the plan. This is simply a suit to enforce an agreement. And if Nielsen characterizes it as an ERISA matter, so be it. I'll let the court decide. But the bottom line is we have a contract. And you can't wave your hand and say you can't put the contract behind your back and say what else you got. And that's essentially what the district court and the plan administrator have tried to do here. And it's just improper burden. It's the wrong standard. And it's a remedy that simply is not available to an ERISA plan administrator. And therefore, we ask that it be reversed. Thank you. Thank you. Okay, just argue. We'll stand for a minute.
judges: Tunheim, Kozinski, Fletcher W.